# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ERNESTO W. PRADA,**

     **Plaintiff,**

    **vs.**                                            **Civ. No. 20-605  JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

     **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 18)[2] filed December 28, 2020, in connection with Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support,* filed March 24, 2021.  Doc.  25.  Defendant filed a Response on July 8, 2021.  Doc. 31.  Plaintiff filed a Reply on July 13, 2021.  Doc. 32.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

## I.  Background and Procedural Record

Plaintiff Ernesto Prada ("Mr. Prada") alleges that he became disabled on September 11, 2015, at the age of forty-eight years and three months, because of bone spurs in the right elbow,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 9.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 18), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

torn bicep and rotator cuff, limited range of motion, traumatic brain injury, memory problems resulting from concussion, vertebral injury and degeneration, limited range of motion – fusion recommended.  Tr. 93-94, 109-110.  Mr. Prada completed the ninth grade in 1982.  Tr. 281. Mr. Prada worked as a carpenter in construction.  Tr. 282.  Mr. Prada stopped working on September 11, 2015, due to his medical conditions.  Tr. 282.

On August 4, 2017, Mr. Prada protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr.251-56, 257-63.  On February 14, 2018, Mr. Prada's applications were denied.  Tr. 91, 92, 93-108, 109-24, 136-67, 168-71.  They were denied again at reconsideration on July 25, 2018.  Tr. 125, 127, 129-45, 146-62, 174-79, 180-85.  Upon Mr. Prada's request, Administrative Law Judge (ALJ) Lillian Richter held a hearing on May 17, 2019.  Tr. 43-90.  Mr. Prada appeared at the hearing with attorney representative Michael Liebman.  *Id*.  On August 15, 2019, ALJ Richter issued an unfavorable decision.  Tr. 22-36.  On May 6, 2020, the Appeals Council issued its decision denying Mr. Prada's request for review and upholding the ALJ's final decision.  Tr. 1-5.  On June 23, 2020, Mr. Prada timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.     Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b), 416.972(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

  **B.** **Standard of Review**

  The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III. <u>Analysis</u>

The ALJ made her decision that Mr. Prada was not disabled at step five of the sequential evaluation.  Tr. 35-36.  The ALJ determined that Mr. Prada met the insured status requirements of the Social Security Act through December 31, 2018, and that he had not engaged in substantial gainful activity from his alleged onset date of September 11, 2015.  Tr. 27.  She found that Mr. Prada had severe impairments of "right rotator cuff concussion and subdural hematoma; spondylosis of cervical region with radiculopathy; chronic pain syndrome; unilateral mass of neck; migraine without aura; memory change; degenerative joint disease in the right elbow; rupture biceps tendon on the right; right carpal tunnel syndrome and cubital tunnel syndrome post release; degenerative disc disease in the right knee; mood disorder; depressive disorder not otherwise specified; general anxiety disorder not otherwise specified; degenerative joint disease in the left shoulder; insomnia; rotator cuff tear left shoulder post arthroscopy; and polyarthralgia[.]"  Tr. 27-28.  The ALJ determined, however, that Mr. Prada's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 28-29.  Accordingly, the ALJ proceeded to step four and found that Mr. Prada had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except can frequently stoop, can occasionally kneel, crouch and balance, can never crawl, can never climb ladders, ropes or scaffolds.  The claimant can occasionally reach overhead bilaterally and can frequently reach in all other directions bilaterally.  The claimant can frequently handle, finger and feel with the dominant right upper extremity.  The claimant can perform simple routine work, can have occasional interaction with supervisors, co-workers and members of the public, can make simple work related decisions in a workplace with few changes in the routine work setting and cannot perform assembly line production work.

Tr. 29.  The ALJ determined that Mr. Prada could not perform any of his past relevant work, but that considering Mr. Prada's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.[4]  Tr. 27-29.  The ALJ, therefore, concluded that Mr. Prada was not disabled.  Tr. 35-36.

In support of his Motion, Mr. Prada argues that (1) the ALJ's RFC is not supported by substantial evidence and is legally erroneous because the ALJ failed to properly evaluate the medical opinion evidence; (2) the ALJ's step five finding is unsupported by substantial evidence and legally erroneous; and (3) the ALJ's findings regarding her evaluation of Mr. Prada's symptoms are unsupported by substantial evidence and legally erroneous.  Doc. 25.

For the reasons discussed below, the Court finds that the ALJ improperly evaluated the medical opinion evidence related to Mr. Prada's physical impairments and the RFC is not supported by substantial evidence.  As such, this case requires remand.

### A.  Relevant Medical Evidence Related to Mr. Prada's Physical Impairments

#### 1.  Christus St. Vincent

##### a.  Emergency Department

Late in the afternoon on September 11, 2015, Mr. Prada was in a motorcycle accident in which he slid sideways into the back of a pickup truck.  Tr. 472.  He was transported by ambulance to Christus St. Vincent Hospital.  *Id.*  The emergency medical services provider reported that Mr. Prada was not wearing a helmet and that alcohol use was suspected.  Tr. 472, 486.  Notes indicate that Mr. Prada reported uncertain loss of consciousness, and that he had

---

[4] The vocational expert testified that Mr. Prada would be able to perform the requirements of representative occupations such as a Merchandise Marker, DOT #209.587-034, which is performed at the light exertional level with an SVP of 2 (463,578 jobs in national economy); a Housekeeping Cleaner, DOT #323.687-014, which is performed at the light exertional level with an SVP of 2 (250,887); and a Router, DOT #222.587-038, which is performed at the light exertional level with an SVP of 2 (71,933).  Tr. 35.

abrasions to his upper lip, loose and chipped teeth upper right, and abrasions to "F/A."  Tr. 472.

Notes also indicate that Mr. Prada had concentration difficulties, with confusion and

disorientation.  Tr. 470.  An initial CT scan revealed findings suspicious for "small amount of

left parafalcine and tentorial extra-axial/subdural hemorrhage," possible "subtle axonal injury,"

and "periorbital soft tissue hematoma."  Tr. 499.  Consultative neurosurgeon Philip Smucker,

M.D., suggested a repeat CT scan "at midnight" and recommended discharging Mr. Prada in his

brother's care with a concussion information sheet.  Tr. 486.  A repeat CT scan demonstrated

"stable subdural hematomas" and Mr. Prada was discharged home.  Tr. 497.

On June 7, 2016, Mr. Prada presented to Christus St. Vincent complaining of chronic

right elbow pain and right knee pain.  Tr. 460.  Radiologic studies of the right elbow

demonstrated "significant arthritic changes identified at the radiocapitellar articulation.  This

includes joint space loss, osteophyte formation, and subchondral cyst formation."  Tr. 466.

Radiologic studies of his right knee demonstrated degenerative changes with "subtle medial joint

space loss, osteophyte formation, and sharpening of the tibial spines."  *Id.*  Healthcare providers

administered a Toradol injection and prescribed ibuprofen and prednisone after which Mr. Prada

was discharged home.  Tr. 463-64.

### b.      Quyah Auh Bui, M.D.

On June 14, 2016, Mr. Prada presented to Quyah Auh Bui, M.D., and reported a history

of right elbow pain.  Tr. 425-27.  Mr. Prada also reported numbness of first three fingers on his

right hand, chronic shoulder pain, right knee and ankle pain, and ruptured biceps tendon.  *Id.*  On

physical exam, Dr. Bui noted

> Ruptured right biceps tendon; right shoulder AC joint tenderness; full range of
> motion on abduction of bilateral shoulders; positive impingement signs on right
> side; right knee tenderness without effusions; negative Phalen's and Tinnel's test

on right carpal; full flexion and extension of right knee; able to dorsiflex and plantarflex right ankle.  Tenderness around right talus.

Tr. 426.  Dr. Bui assessed (1) rupture of bicep tendon, right, initial encounter; (2) elbow arthritis; (3) right shoulder pain; (4) right carpal tunnel syndrome; (5) right knee pain; and (6) right ankle pain.  *Id.*  Dr. Bui referred Mr. Prada to orthopedics for evaluation of rupture of biceps tendon rupture, right-sided shoulder pain, elbow arthritis and carpal tunnel.  *Id.*  Dr. Bui also encouraged Mr. Prada to establish with a primary care physician.  *Id.*

### c.   <u>Philip Forno, M.D.</u>

On July 11, 2016, Mr. Prada presented to orthopedic surgeon Philip Forno, M.D., with complaints of right elbow pain and with numbness and tingling in his hands.  Tr. 501-02.  On physical exam, Dr. Forno noted positive carpal tunnel provocative maneuvers and that radiograph imaging of elbow revealed osteoarthritis.  Tr. 501.  Dr. Forno assessed arthritis of right elbow and right carpal tunnel syndrome.  *Id.*  Dr. Forno discussed with Mr. Prada conservative versus surgical care, and Mr. Prada stated he wished to proceed with arthroscopic osteo-capsular arthroplasty and endoscopic carpal tunnel release.  *Id.*

On July 14, 2016, Mr. Prada underwent right endoscopic carpal tunnel release; right ulnar nerve release at the elbow; right elbow arthroscopic synovectomy, complete; right elbow arthroscopic debridement, extensive; and right arthroscopic loose body removal.  Tr. 503-04.

On July 21, 2016, Mr. Prada began physical therapy related to his right elbow release and attended eight sessions.  Tr. 373-95.

On August 31, 2016, Mr. Prada presented to Dr. Forno for post-operative care related to his right wrist and right elbow.  Tr. 703-04.  On physical exam Dr. Forno indicated that Mr. Prada was doing very well with physical therapy.  *Id.*  Dr. Forno prescribed non-steroidal anti-inflammatory gel for Mr. Prada's elbow pain.

On April 9, 2018, Mr. Prada presented to Dr. Forno based on a referral from Michael

McKinney, M.D., for bilateral shoulder pain – right worse than left.  Tr. 855-56.  On physical

exam, Dr. Forno indicated "[e]xtremely weak with supraspinatus isolation and pain in the right

shoulder.  Positive rotator cuff provocative maneuvers bilaterally."  Tr. 856.  Dr. Forno assessed

complete rotator cuff tear of right and left shoulders.  *Id.*  Dr. Forno ordered MRIs.[5]

On June 13, 2018, Mr. Prada returned to discuss MRI results.  Tr. 852-53.  Dr. Prada

explained that the MRI of the right shoulder showed mild glenohumeral joint arthritis.  *Id.*

Dr. Forno assessed shoulder arthritis and discussed possible treatment options.  *Id.*  Mr. Prada

requested an injection and to be referred for physical therapy.  Tr. 853.

On December 6, 2018, Mr. Prada underwent left rotator cuff repair arthroscopy,

subacromial decompression arthroscopy, and arthroscopy shoulder.  Tr. 888-889.

On December 17, 2018, Mr. Prada returned for follow up of left rotator cuff repair.  Tr.

958-73.  Mr. Prada reported not wearing his sling and using his arm.  Tr. 962.  He also reported

not going to physical therapy.  *Id.*  Dr. Forno counseled Mr. Prada on the possibility of a repeat

surgery and provided another physical therapy referral.  Tr. 963.

On January 28, 2019, Mr. Prada returned for follow up of left rotator cuff repair.  Tr. 890-

903.  Mr. Prada reported that he was doing home exercises and using his arm.  Tr. 894.  He also

reported that the pain in his shoulder was improving, but that he had begun having right wrist

pain.  *Id.*  On physical exam, Dr. Forno noted right carpal tunnel positive provocative maneuvers

and tenderness right wrist.  *Id.*  Radiologic studies indicated wrist arthritis and mild carpal

---

[5]  MRI of Mr. Prada's right shoulder indicated, *inter alia*, "[r]otator cuff tendinopathy with small partial-thickness tears of the supraspinatus and infraspinatus tendons.  No full-thickness rotator cuff tear identified."  Tr. 858-59.  MRI of Mr. Prada's left shoulder indicated "[t]here is an unfused os acromiale.  There is tendinopathy and high-grade partial tears of the subscapularis and supraspinatus with no muscle atrophy.  There is moderate acromioclavicular with mild glenohumeral osteoarthritis."  Tr. 860-61.

tunnel.  Tr. 895.  Dr. Forno planned to address Mr. Prada's wrist pain "when his shoulder is done."  *Id.*

On February 25, 2019, Mr. Prada presented to Dr. Forno with concerns about his left shoulder repair following an incident where he had to pull his dog away from other dogs.  Tr. 931-39.  Dr. Forno obtained an ultrasound and determined the repair was intact.  Tr. 936. Dr. Forno referred Mr. Prada for physical therapy.[6]

### d. **Michael McKinney, M.D.**

On October 4, 2016, Mr. Prada presented to Michael McKinney, M.D., to follow up on right elbow and shoulder pain.  Tr. 422-24.  Mr. Prada reported getting wood the previous week and reinjuring his right shoulder.  *Id.* Mr. Prada also reported a history of right biceps tendon rupture.  *Id.*  On physical exam Dr. McKinney noted tenderness and stiffness along the trapezius muscle and decreased range of motion in the neck due to pain.  *Id.*  He also noted decreased range of motion right shoulder and tenderness of right shoulder and elbow.  *Id.*  Dr. McKinney assessed right shoulder injury and referred Mr. Prada to orthopedics.  *Id.*  Dr. McKinney also assessed neck pain and prescribed Cyclobenzaprine and ordered radiologic studies.  *Id.*

Mr. Prada presented to Dr. McKinney twelve more times over the next two and a half years complaining of, *inter alia,* neck pain and right handed weakness.  Tr. 413-14, 419-20, 698-700, 731-32, 738-39, 743-45, 751-53, 757-60, 809-10, 904-10, 911-13, 1007-08.  On physical exam on October 19, 2016, Dr. McKinney noted neck stiffness, difficulty moving head side to side due to stiffness and pain, significant crepitus of c-spine; limited range of motion in

---

[6] On March 14 2019, Mr. Prada presented for physical therapy.  Physical Therapist Paul Maloney assessed "[m]oderate limitations in ROM, strength, pain management, functional mobility and ADL tolerance following traction injury L shoulder suffered 3 weeks ago.  Pt. demonstrates signs of mm/strain to recently repaired L RTC, as well as possible brachial plexus irritation." Tr. 883.  Mr. Prada attended seven physical therapy sessions from March 14, 2019, through April 10, 2019.  Tr. 873-887.

extremities due to neck pain and stiffness; and weakness of upper extremities with decreased grip strength and decreased sensation to light touch of hands.  Tr. 698-99.  Dr. McKinney assessed chronic pain syndrome and neck pain and referred Mr. Prada for an MRI and to Santa Fe Brain and Spine Associates.[7][8][9][10]  Tr. 699.  On October 26, 2019, Dr. McKinney made similar findings on exam.  Tr. 419-20.

On March 16, 2017, Mr. Prada reported continuing neck and shoulder pain and weakness in both upper extremities.  Tr. 413.  Mr. Prada reported having injections at the pain clinic which provided some initial relief but that it was not lasting.  *Id.*  On physical exam, Dr. McKinney noted Mr. Prada's neck was supple with a full range of motion.  *Id.*  Dr. McKinney assessed

---

[7]  An MRI from November 2, 2016, indicated mild degenerative disc disease generally; mild to moderate bilateral foraminal compromise with uncovertebral osteophyte and facet arthropathy at C3-4; and mild foraminal narrowing with mild uncovertebral osteophyte and facet arthropathy at C4-5.  Tr. 721.  There was no remarkable neural impingement, central canal stenosis or significant foraminal compromise.  *Id.*

[8]  On November 14, 2016, Mr. Prada presented to neurologist Marshall Watson, M.D.  Tr. 696-97.  Dr. Watson indicated that Mr. Prada's cervical x-rays and MRI "overall look good."  Tr. 696.  On physical exam, Dr. Watson indicated "neck supple, no significant tenderness" and "notable right biceps deformity."  Tr. 697.  Dr. Watson assessed spondylosis of cervical region without myelopathy or radiculopathy and recommended nonsurgical pain management.  *Id.*

[9]  On December 13, 2016, Mr. Prada presented to Janet Smith, N.P. at Pain Management Services based on a referral from Dr. Watson.  Tr. 692-95.  On physical exam, NP Smith noted limited rotation of neck and tenderness in cervical paraspinous area.  Tr. 693-94.  She assessed spondylosis of cervical region without myelopathy or radiculopathy and chronic pain syndrome, and scheduled Mr. Prada for left cervical facet injections.  Tr. 694.

[10]  On January 28, 2017, anesthesiologist David Woog, M.D., performed left-sided C3/4, C4/5 intraarticular facet joint injections on Mr. Prada based on his diagnosis of cervical spondylosis with facet joint arthropathy.  Tr. 455-56, 583-589.

spondylosis of cervical region and advised Mr. Prada to continue management with the pain

clinic.[11] [12]  Tr. 414.

On November 13, 2017, Mr. Prada presented to Dr. McKinney with complaints of, *inter*

*alia*, ongoing neck pain radiating down both arms.  Tr. 757.  Dr. McKinney referred Mr. Prada to

neurosurgery for additional evaluation and management options.  Tr. 758.

On January 22, 2018, Mr. Prada presented to Dr. McKinney complaining of right

shoulder pain.  Tr. 743-44.  On physical exam, Dr. McKinney noted decreased range of motion

due to pain and mild tenderness to palpation.  Tr. 743.  Dr. McKinney referred Mr. Prada to

orthopedics for evaluation and pain management.  Tr. 744.

On May 25, 2018, Mr. Prada presented to Dr. McKinney with complaints of "severe neck

pain on the right side x 1 week" different from usual posterior neck pain.  Tr. 738-39.  On

physical exam Dr. McKinney noted tender to palpation along the right sternocleidomastoid and

decreased range of motion of both shoulders.  Tr. 738.  Dr. McKinney prescribed

Cyclobenzaprine and Norco and referred Mr. Prada to sports medicine for physical therapy.[13]

Tr. 739.

---

[11] On August 17, 2017, Mr. Prada presented to Rawan Maali, M.D., with complaints of neck pain.  Tr. 679-80.  On physical exam, Dr. Maali noted "[p]alpable rounded mass felt on the left distal anterior aspect of the neck that moves with swallowing however seems to be different and separate from the thyroid gland[.]  Tenderness on palpating the left paraspinous cervical muscles, tightness of the left paraspinal cervical muscles in comparison to the right side, limited range of motion in the neck."  Tr. 679.  Dr. Maali assessed neck pain on left side and unilateral mass of neck.  Tr. 680.  He referred Mr. Prada to physical therapy and scheduled him for a trigger point injection.  *Id.*  Dr. Maali also ordered an ultrasound to evaluate the neck mass.  *Id.*

[12] Xray studies from September 20, 2017, indicated mild hyperlordosis of the cervical spine – MRI recommended for further evaluation; mild acromioclavicular joint degenerative joint disease in the right and left shoulders; severe degenerative joint disease in the right elbow "worse laterally where there is complete joint space loss, opposing subchondral sclerosis and cystlike change as well as robust marginal osteophyte formation"; and mild/early tricompartmental joint space narrowing of the right knee.  Tr. 645.

[13] Mr. Prada attended physical therapy from June 20, 2018, through July 23, 2018.  Tr. 811-50.

On June 26, 2018, Mr. Prada presented for follow up on neck and shoulder pain.  Tr. 731-32.  Mr. Prada stated he had to keep his neck in a neutral position and that symptoms exacerbated with turning his head or laying on his side.  Tr. 731.  On physical exam, Dr. McKinney noted tender to palpation along the right sternocleidomastoid; tender to palpation along cervical spine; decreased range of motion; improved range of motion right shoulder; decreased range of motion left shoulder.  *Id.*  Dr. McKinney assessed osteoarthritis of spine with radiculopathy, cervical region; shoulder arthritis; and pain in left shoulder.  Tr. 732.  Dr. McKinney refilled prescription medications and noted that Mr. Prada would continue with physical therapy.  *Id.*  Dr. McKinney also indicated that he would consider surgical options if Mr. Prada failed to obtain any relief.  *Id.*

On July 16, 2018, Mr. Prada presented to Dr. McKinney and reported concerns that his neck pain was worsening after physical therapy.  Tr. 809-10.  On physical exam, Dr. McKinney noted tender to palpation along the right sternocleidomastoid; tender to palpation along cervical spine; decreased range of motion of neck; increased tone of right hand with grip.  Tr. 809.  Dr. McKinney assessed cervicalgia and osteoarthritis of spine with radiculopathy, cervical region.  Tr. 809-10.  Dr. McKinney planned to obtain an MRI and refer Mr. Prada to neurosurgery.  Tr. 810.

On August 24, 2018, Mr. Prada returned for follow up on his MRI.  Tr. 1007-08.  Dr. McKinney explained that the MRI showed degenerative disc disease and facet arthropathy.  *Id.*  On physical exam, Dr. McKinney noted tender to palpation along the right sternocleidomastoid; tender to palpation along cervical spine; decreased range of motion of neck; increased tone of right hand with grip.  *Id.*  Dr. McKinney assessed osteoarthritis of spine with

radiculopathy, cervical region.  *Id.*  Dr. McKinney referred Mr. Prada to neurosurgery for evaluation and medication management options.[14] [15] [16]  *Id.*

On January 28, 2019, Mr. Prada saw Dr. McKinney for follow up on chronic pain.  Tr. 904-10.  Mr. Prada reported that his left shoulder was feeling much better since surgery and that he still has pain but it is improving.  Tr. 907.  Mr. Prada also reported that he was contemplating having surgery on his right shoulder.  *Id.*  Mr. Prada stated that he continued to have neck pain and was scheduled for neck injections in March.  *Id.*  Mr. Prada reported good control of his pain with Norco and requested getting medical cannabis to help reduce his opiate use.  *Id.*  On physical exam, Dr. McKinney noted decreased range of motion and tenderness right and left shoulder and decreased range of motion cervical back, with tenderness, bony tenderness and edema.  Tr. 907.  Dr. McKinney assessed chronic pain syndrome and planned to continue current pain regimen.  Tr. 908.

On May 8, 2019, Dr. McKinney completed a *Medical Opinion Re: Ability To Do Work-Related Activities (Physical)* on Mr. Prada's behalf.  Tr. 1010-11.  Dr. McKinney assessed that based on cervical degenerative joint disease, cervical spondylosis, left rotator cuff tear, right

---

[14] On September 26, 2018, Mr. Prada presented to neurosurgeon Philip T. Shields, M.D., for bilateral neck pain and right hand pain.  Tr. 1013-17.  On physical exam, Dr. Shields noted, *inter alia,* neck and back – nontender to palpation; 5/5 motor strength with normal tone.  Tr. 1016.  Dr. Shields assessed degenerative disc disease, cervical and cervical spondylosis with radiculopathy.  *Id.*  Dr. Shields assessed mild to moderate findings and did not recommend surgical treatment.  *Id.*  Dr. Shields referred Mr. Prada for a steroid injection and gave him a referral for chiropractic treatments. *Id.*

[15] On November 20, 2018, Mr. Prada presented to CFNP Corey Sutter based on a referral from Dr. Shields.  Tr. 866-869.  On physical exam of Mr. Prada's cervical spine/neck, CFNP Sutter noted, *inter alia,* "[t]rigger point palpable throughout the cervical paraspinous muscles, significant spasm; decreased neck flexion, extension, lateral rotation bilaterally; and decreased shoulder extension bilaterally.  Tr. 868.  CFNP Sutter assessed osteoarthritis of spine with radiculopathy, cervical region and spondylosis of cervical region without myelopathy or radiculopathy.  Tr. 869.  CFNP Sutter planned to schedule a cervical epidural following left-sided shoulder surgery in December, and discussed spasms with Mr. Prada and prescribed a trial of Tizanidine.  *Id.*

[16] On February 13, 2019, Mr. Prada presented to Robin Hermes, M.D., based on a referral from CFNP Sutter, for interlaminar cervical epidural steroid injection C7/T1, and fluoroscopic guidance used for needle localization and contrast injection.  Tr. 863-65.

carpal tunnel syndrome, arthritis right elbow, polyarthralgia, chronic migraines and loss of

balance, Mr. Prada was (1) able to lift and carry less than ten pounds occasionally and/or

frequently in an eight-hour workday; (2) able to stand and walk for about two hours in an eight-

hour workday; (3) able to sit for about two hours in an eight-hour workday; (4) able to sit for

thirty minutes before having to change positions; (5) able to stand for thirty minutes before

having to change positions; (5) must be able to walk around every thirty minutes for

approximately fifteen minutes; (6) must have the opportunity to shift at will from sitting or

standing/walking; and (7) must be able to sometimes lie down every two to four hours during an

eight-hour workday.  Tr. 1010.  Dr. McKinney assessed that Mr. Prada could occasionally twist,

stoop, crouch and climb stairs, but should never climb ladders.  Tr. 1011.  Dr. McKinney

assessed that Mr. Prada had physical limitations in his ability to reach, finger, push/pull, handle

and feel due to pain related to right carpel tunnel and left rotator cuff tear.  *Id.*  Dr. McKinney

assessed that Mr. Prada should avoid extreme cold, extreme heat, high humidity, fumes, odors,

dusts, gases, perfumes, soldering fumes, solvents/cleaners, and chemicals.  *Id.*  Finally,

Dr. McKinney assessed that Mr. Prada may need an assistive device when ambulating due to

pain and loss of balance, and that Mr. Prada could be absent from work more than four days per

month based on his physical impairments.  *Id.*

  The ALJ found Dr. McKinney's opinion was not supported by his treatment notes.  Tr.

33.

   **2.**  **<u>Linda Ponce, M.D.</u>**

  On September 30, 2017, Mr. Prada presented to Linda Ponce, M.D., for a consultative

physical exam.  Tr. 650-56.  Mr. Prada reported alleged impairments of neck pain, memory

issues related to 2015 motorcycle accident, pain when swallowing, right knee pain, right elbow

pain, right arm decreased strength, and headaches.  Tr. 650.  Dr. Ponce took various histories, *i.e.,* musculoskeletal, mental issues, functional status, and past medical.  Tr. 651-52.  On physical exam, Dr. Ponce noted, *inter alia*, that Mr. Prada was able to get up and out of the chair without difficulty, able to get on and off the exam table without difficulty, that Mr. Prada ambulated with difficulty but without an assistive device and that his gait was abnormal and markedly antalgic. Tr. 653.  Dr. Ponce noted spasm of the paraspinous muscles.  *Id.*  Sitting straight leg raising exam noted both legs 90 degrees without pain; supine straight leg raising exam noted both legs 80 degrees without pain.  Tr. 653-54.  Dr. Ponce indicated that Mr. Prada was able to walk on his toes and heels, could squat and recover albeit with difficulty, and was able to bend over and touch his toes.  Tr. 654.  Dr. Ponce noted Mr. Prada had difficulty with grip in his right hand and that his range of motion was not full in all extremities, *i.e.,* cervical flexion was limited with "[j]oint abnormality noted, crepitus palpated over posterior neck c5-c6 levl."  Tr. 654.  Dr. Ponce also indicated absent bilateral triceps reflexes, abnormal right biceps bulge, and abnormal nodular enlargement over right wrist.  Tr. 654-55.  Based on her exam, Dr. Ponce assessed that Mr. Prada had limitations as follows:

> The claimant has limitation in standing and is able to stand continuously in an 8 hour workday.  The claimant has limitation in sitting and is able to sit frequently in an 8 hour workday.  The claimant has limitation in walking and is able to walk continuously in an 8 hour workday.  The claimant has limited ability to reach, handle or grasp, due to right shoulder and biceps injury.  The claimant can only lift and carry 5-10 lbs on a continuous basis on the right side.  The claimant was able to ambulate, had difficulty, but did not require assistive device.

Tr. 655-56.

The ALJ found Dr. Ponce's assessment unpersuasive.  Tr. 33.

3.      **Patty Rowley, M.D.**

On November 21, 2017, nonexamining State agency medical consultant Pat Rowley,

M.D., reviewed the medical evidence record at the initial level of review.  Tr. 102-04, 118-120.

Dr. Rowley assessed that based on Mr. Prada's medically determinable impairments and

objective and functional evidence that Mr. Prada was capable of a full range of light exertional

level work.[17]  *Id.*

The ALJ found Dr. Rowley's assessment generally persuasive explaining that it reflects a

review of and consistency with the medical evidence of record.  Tr. 34.

4.      **Scott Newton, M.D.**

On July 25, 2018, nonexamining State agency medical consultant Scott Newton, M.D.,

reviewed the medical evidence record at reconsideration.  Tr. 139-41, 156-18.  Dr. Newton

affirmed Dr. Rowley's November 21, 2017, RFC assessment.  *Id.*

The ALJ found Dr. Newton's assessment generally persuasive explaining that it reflects a

review of and consistency with the medical evidence of record.  Tr. 34.

B.      **Legal Standard**

1.      **RFC Assessment**

Assessing a claimant's RFC is an administrative determination left solely to the

Commissioner "based on the entire case record, including objective medical findings and the

credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71

(10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law

judge hearing level or at the Appeals Council review level, the administrative law judge or the

---

[17] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[18]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R. §§ 404.1527(b), 416.927(b)[19]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

---

[18] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[19] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

2. **Medical Opinion Evidence**

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), §§416.920c(a). The SSA does not give "any specific weight, including controlling weight, to any medical opinion(s)." *Id.*

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ is not required to discuss each factor articulated in the regulations; rather, the ALJ must merely explain his weighing decision with sufficient specificity so as to be capable of review. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Put differently, if an ALJ rejects an opinion, he "must then give 'specific, legitimate reasons for doing so.' " *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

C. **The ALJ's Explanations for Rejecting Certain Medical Opinion Evidence Related to Mr. Prada's Ability To Do Work-Related Physical Activities Are Insufficient and Not Supported by Substantial Evidence**

The ALJ explained that Dr. McKinney's assessment of Mr. Prada's ability to do work-related physical activities was unpersuasive because his opinion was not supported by his treatment notes. Tr. 33. In support of her explanation, the ALJ cited a single treatment note from January 2019 in which Dr. McKinney indicated that Mr. Prada reported his pain was well

controlled with medication.  *Id.*  The ALJ also explained that Dr. McKinney's opinion was not consistent with other objective medical evidence "like the generally benign physical examination findings at Exhibit 8."[20]  *Id.*

The ALJ also found Dr. Ponce's opinion regarding Mr. Prada's ability to reach, hand or grasp and lift and carry five to ten pounds on the right side unpersuasive.  Tr. 33.  The ALJ explained that the opinion was not well supported by Dr. Ponce's examination findings.  Tr. 33. The ALJ went on to say that "[w]hile he [sic] notes a diminished grip, he [sic] found normal range of motion and full strength throughout, findings that are inconsistent with a lifting limitation of only up to ten pounds."  Tr. 33.

Mr. Prada argues that the ALJ failed to properly evaluate Dr. McKinney's and Dr. Ponce's opinion evidence.  Doc. 25 at 22-29.  Mr. Prada argues that the ALJ's reason for finding Dr. McKinney's assessment unpersuasive is "stunning for its blatant selective review of the record."  *Id.* at 22.  Mr. Prada asserts that Dr. McKinney's treatment note from one visit indicating that Mr. Prada was managing his pain with medication does not erase the vast majority of the physical exam findings and diagnoses from all of Dr. McKinney's other treatment notes that indicated "multiple joint pain from his shoulders to right knee, reduced motion spasm, cervical radiculopathy, stiff neck, upper extremity weakness, crepitus, diminished right hand grip strength, abnormal sensation, balance disturbance, headaches, edema, and limited medication efficacy."  *Id.* at 23.  Additionally, Mr. Prada asserts that Dr. McKinney's treatment notes are consistent with the diagnoses and clinical findings of other treating doctors, including pain specialists, orthopedists, orthopedic surgeons, and physical therapists, as well as consistent with

---

[20] Exhibit 8 in the Administrative Transcript is Dr. Ponce's consultative exam report.  Tr. 649-56 (Exh. 8).

objective medical findings from x-ray and MRI reports.  *Id.* at 23-24.  Mr. Prada contends that
the ALJ's refusal to credit Dr. McKinney's opinion is unsupported.  *Id.*

Mr. Prada also argues that the ALJ's finding that Dr. Ponce's opinion is unpersuasive is
not supported by the evidence.  Doc. 25 at 24-25.  Mr. Prada asserts that the ALJ's
characterization of Dr. Ponce's exam findings as benign is belied by her exam findings that
included a markedly antalgic gait, thoracic and cervical spasm, diminished right hand grip
strength, reduced cervical motion with crepitus, absent bilateral triceps reflexes, right biceps
bulge, and right ulna nodular enlargement.  *Id.*  Mr. Prada contends that Dr. Ponce's assessment
of severe functional limitations in Mr. Prada's right upper extremity undercuts the ALJ's finding
of only minimally impaired function.  *Id.*

The Commissioner responds generally that the substantial evidence supports the ALJ's
RFC assessment for a range of unskilled light exertional work.  Doc. 31 at 4-10.  More
specifically, the Commissioner argues that the ALJ properly relied on Dr. McKinney's January
2019 treatment note as a basis for discounting his assessment because it was the most
contemporaneous treatment note of record.  *Id.* at 9.  The Commissioner also argues that the ALJ
properly cited Dr. Ponce's "benign" exam to support her conclusion that Dr. McKinney's
assessment related to Mr. Prada's ability to perform any manipulative functions was inconsistent
with other medical record evidence.  *Id.* at 9-10.

As for the ALJ's evaluation of Dr. Ponce's opinion evidence, the Commissioner states
that it should be noted that Dr. Ponce only opined a limitation to lift and carry to Mr. Prada's
right arm and did not limit the use of Mr. Prada's left arm at all.  Doc. 31 at 8.  The
Commissioner further states that there is no conflict between Dr. Ponce's lifting and carrying
limitation and the ALJ's RFC assessment, *i.e.,* Dr. Ponce limited Mr. Prada to lifting and

carrying five to ten pounds with his right arm on a continuous basis, or two-thirds of an eight-hour workday, which is all that is required for light work.  *Id.*  The Commissioner similarly argues that there is no conflict between the ALJ's RFC assessment and Dr. Ponce's unspecified limitation on Mr. Prada's ability to reach, handle, or grasp due to his right shoulder and biceps injury.  *Id.*  The Commissioner contends that regardless, "the ALJ reasonably noted the incongruity between Dr. Ponce's examination findings and opined limitations as to the right hand."  *Id.*

To begin, the Court generally finds the ALJ's discussion of the medical evidence falls woefully short of the legal standard to consider all of the evidence.  *See Clifton,* 79 F.3d at 1009-10.  For example, the ALJ ignored evidence of Dr. Bui's and Dr. Forno's diagnoses related to Mr. Prada's carpal tunnel syndrome when she speculated that "it is not clear when and how carpal tunnel was diagnosed."  Tr. 32, 426, 501, 503-04.  The ALJ indicated that Mr. Prada attended a "single session of physical therapy" following right carpal tunnel and elbow surgery when the record clearly indicates he attended eight sessions.  Tr. 30,  373-95.  The ALJ dismissed Mr. Prada's cervical pain, explaining that while physical examinations by physical therapists showed cervical deficits, examinations performed by neurologists did not.[21]  Tr. 32. However, in doing so, the ALJ omits discussion of evidence in the record demonstrating numerous physical examinations by multiple providers who indicated the presence of cervical deficits.  Tr. 422-24, 654-55, 668-69, 679, 693-694, 731, 809, 868, 3907, 1007-08.  The ALJ stated that Mr. Prada had good results following a facet injection for neck pain by Dr. Woog on January 26, 2017, but failed to discuss that Mr. Prada reported to Dr. McKinney soon afterwards

---

[21] In support, the ALJ cites to Dr. Woog's admission note related to performing left-sided C3/4, C4/5 intraarticular facet joint injections and to Dr. Shield's treatment note.  Tr. 32 (citing Exhs. 5F/77, 22F/5).  Dr. Woog is an anesthesiologist.

that the initial relief he experienced had not lasted.  Tr. 30, 413.  And notably, the ALJ failed to

discuss at all Dr. McKinney's treatment notes related to Mr. Prada's ongoing complaints of neck

pain and right sided weakness that spanned two and half years.  This is error.  *Clifton,* 79 F.3d at

1009 (the record must demonstrate that the ALJ considered all of the evidence and must discuss

the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects).

The Court also finds that the ALJ improperly substituted her lay opinion for that of a

medical professional in her discussion of the medical evidence record.  *See Sisco v. U.S. Dep't of*

*Health & Human Servs.,* 10 F.3d 739, 744 (10th Cir.1993) (an ALJ cannot substitute her lay

opinion for that of a medical professional and such findings are legally flawed).  For example,

the ALJ concluded that radiologic studies of Mr. Prada's cervical spine showed "only minor

deficits" because they failed to demonstrate any evidence showing compromise of the spinal

cord or nerve roots.  Tr. 32.  In coming to that conclusion, however, the ALJ ignored objective

findings of degenerative disc disease and facet arthropathy (Tr. 721-1007, 1016), diagnoses by

multiple providers of spondylosis of cervical region with joint arthropathy and radiculopathy and

osteoarthritis of spine with radiculopathy, cervical region (Tr. 414, 456, 694, 697, 732, 809, 869,

1016), and the necessity of multiple trigger point injections (Tr. 455-56, 676, 863-65).  The ALJ

also concluded that MRI studies of Mr. Prada's shoulders showed "only minor deficits" because

they failed to demonstrate full rotator cuff tears.  Tr. 32.  This conclusion ignored objective

findings demonstrating partial rotator cuff tears and the necessity of surgical repair.  Tr. 32, 858-

61, 888-89.  Lastly, the ALJ questioned the medical necessity and basis of Dr. Forno's

arthroscopic repair of Mr. Prada's left rotator cuff given that "Dr. Forno initially recommended

conservative treatment." Tr. 32, 856, 858-61, 958-73. These findings are not supported by substantial evidence and are legally flawed as improper lay opinion. *Sisco,* 10 F.3d at 744.

As for the ALJ's evaluation of Dr. McKinney's and Dr. Ponce's medical opinion evidence, the Court agrees that the ALJ failed to provide legitimate explanations supported by substantial evidence for finding their assessments unpersuasive. In finding Dr. McKinney's assessment unpersuasive, the ALJ explained that the assessment was not supported by Dr. McKinney's treatment notes. Tr. 33. In support, the ALJ cites Dr. McKinney's January 28, 2019, treatment note in which Mr. Prada reported he had good control of his pain with Norco. Tr. 33, 907. The ALJ's reliance on this note is flawed for at least three reasons. First, Mr. Prada's statement was addressing only his neck pain, not all pain. Tr. 907. Second, Mr. Prada did not report to Dr. McKinney the absence of neck pain. To the contrary, he reported that his neck pain persisted. *Id.* Third, and most importantly, it is legal error for the ALJ to rely on one, taken-out-of-context statement from one of Dr. McKinney's treatment notes, to the exclusion of all others, to support her evaluation of the medical opinion evidence. *See* 20 C.F.R. §§ 404.1520c(c)(1), 419.920c(c)(1) (explaining that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion the more persuasive the medical opinion will be); *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (explaining that an ALJ may not "mischaracterize or downplay evidence to support h[is] findings").

Further, the ALJ's reliance on Dr. Ponce's physical exam as "benign" as a basis for rejecting Dr. McKinney's assessment is equally flawed. As noted above, Dr. Ponce's findings

24

on exam included a markedly antalgic gait, thoracic and cervical spasm, diminished right hand grip strength, reduced cervical motion with crepitus, absent bilateral triceps reflexes, right biceps bulge, and right ulna nodular enlargement.  *Id.*  All of these findings arguably support and are consistent with Dr. McKinney's assessed limitations related to Mr. Prada's ability to lift and carry and his inability to perform manipulative functions, which the ALJ failed to address.  *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical sources in the claim, the more persuasive the medical opinion will be).[22]

Lastly, even though supportability and consistency are the most important factors in evaluating the medical opinion evidence, the ALJ cannot ignore other factors to be considered when doing so such as Dr. McKinney's treatment relationship with Mr. Prada.  *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3) (explaining that a medical provider's relationship with the claimant is a factor to be considered when evaluating medical opinion evidence, including the length of treatment, frequency of examinations, purpose of the treatment relationship, extent of treatment relationship, and examining relationship); *see also  Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.").  The ALJ's determination is silent with respect to any consideration of this factor.

---

[22] The Court notes that Dr. McKinney's opinion is inconsistent with the nonexamining State agency medical consultant assessments, whose opinions the ALJ found generally persuasive.  Tr. 33-34.  However, Drs. Rowley and Newton rendered their assessments eighteen months and ten months, respectively, *before* Dr. McKinney's assessment.  *See generally Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior).  Moreover, Dr. McKinney had a treating relationship with Mr. Prada and Drs. Rowley and Newton were nonexamining medical consultants.  *See* 20 C.F.R. § 1520c(3)(v) (explaining that a medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder).

In finding Dr. Ponce's assessment unpersuasive, the ALJ explained only that it was not supported by her exam findings.  Tr. 33.  The ALJ goes on to say that "[w]hile he [sic] noted a diminished grip, he [sic] found normal range of motion and full strength throughout, findings that are inconsistent with a lifting limitation of only up to ten pounds."  *Id.*  As previously noted multiple times herein, however, Dr. Ponce did not find normal range and motion and full strength throughout on her exam of Mr. Prada.  The ALJ's explanation, therefore, is simply not supported by the evidence.  Further, the Commissioner's attempt to salvage the ALJ's explanation by arguing there is no conflict between Dr. Ponce's assessed limitations and the ALJ's RFC amounts to post-hoc rationalization which this Court may not adopt.  *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").[23]

In sum, the Court finds that the ALJ failed to provide explanations supported by substantial evidence for finding Dr. McKinney and Dr. Ponce's medical opinion evidence unpersuasive.  This is error.  *Clifton,* 79 F.3d at 1009.  Further, because the ALJ failed to provide an adequate discussion describing how the evidence supports her consideration of their opinions, as well as the evidence at large, the Court concludes that the RFC is not supported by substantial evidence.  *Southard*, 72 F App'x at 784-85.

---

[23] The Commissioner's argument in any event fails because the ALJ's RFC assessment did not distinguish between Mr. Prada's lifting capacity with his right and left arms.  Further, the Commissioner's argument that a limitation in the right arm is of no consequence given the full use of the left fails to appreciate that this may be relevant in a variety of jobs.  *See Greer v. Astrue*, 322 F. App'x 513, 514-15 (9th Cir. 2009) (unpublished) (finding that the ALJ's opinion did not distinguish between claimant's lifting capacity with his right and left arms, which may be relevant in a variety of jobs, and that on remand the ALJ should more fully address the medical evidence).  Finally, Dr. Ponce's assessment that Mr. Prada could only lift 5-10 pounds on a continuous basis on the right side falls short of the requirements for light duty work which requires the ability to lift up to 20 pounds occasionally in an eight-hour workday.  20 C.F.R. §§ 404.1567(b), 416.967(b).

**D.**     **Remaining Issues**

The Court will not address Mr. Prada's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.  Conclusion

For the reasons stated above, Mr. Prada's Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support (Doc. 25) is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**